## GHOLSTON BROTHERS *v.* NORTHEASTERN BANKING COMPANY *et al.*

Where the owner of land sells the same, receives a portion of the purchase-money in cash, delivers to the vendee his bond for title, conditioned to make title to the latter upon the payment of notes given for deferred installments of the purchase-price of the land, the same being payable to the vendor or bearer, and afterwards executes and delive̅s to a third person a deed to such land to secure a debt due to such third person by the vendor, the vendee in the security deed not obtaining possession of such notes, which are retained by the vendor, who afterwards transfers them by delivery to another of his creditors, who takes them in good faith, for value, before due, and without notice of any claim or right of the vendee in the security deed to the notes or their proceeds, the title of such holder of said notes and the proceeds thereof is superior to that of the vendee in the security deed; and the court below erred in directing a verdict finding the title to these notes to be in such vendee, and that such vendee was entitled to the proceeds thereof.

No. 4103. MAY 13, 1924.

Equitable petition. Before Judge Hodges. Madison superior court. November 17, 1923.

W. G. Owenby and Mrs. M. I. Owenby, on December 16, 1922, brought their equitable petition for interpleader against the Northeastern Banking Company, Gholston Brothers, and J. P. Smith, and made this case: In 1916 petitioners bought a certain tract of land from J. P. Smith, and gave him a series of notes for the same, one falling due each year up to and including the year 1925. These notes, excepting the first, were for $240 each, and all were

payable to J. P. Smith or bearer. The petitioners, at the time of the purchase, went into possession of the land under bond for title from Smith, under which he obligated to make to them title to the land upon payment of their notes so given for the purchase-money. They paid all of said notes as they became due. Four of said notes remained unpaid, which fell due respectively in 1922, 1923, 1924, and 1925. In 1919 Smith executed to the Northeastern Banking Company a deed to said land to secure a debt due by him to that company, but did not turn over to said company the purchase-money notes of petitioners, unpaid at the time, which were held by Smith. Smith collected the purchase-money notes which fell due in 1919, 1920, and 1921, although the banking company held said security deed. In the spring of 1922 Smith delivered to Gholston Brothers the four notes which would become due respectively November 1, 1922, 1923, 1924, and 1925, to secure an indebtedness due them by him, and transferred the same without indorsement, the notes being payable to bearer, and they were held by Gholston Brothers at the time this suit was brought. The banking company had reduced its debt against Smith to judgment, and was about to levy the execution issuing thereon on this land. Gholston Brothers were threatening to sue petitioners on the notes held by them. The banking company insisted that its claim to the notes was superior to that of Gholston Brothers, as it had acquired the title that Smith held to this land before the transfer of the notes by Smith to Gholston Brothers; and Gholston Brothers contended that they had the title to the notes, having purchased the same before due and without any notice of the claim of the banking company, the notes being payable to bearer, that the banking company had no right, title, or interest in said notes, and that they should not be required to deliver up the notes to the banking company, but were entitled to hold and collect them. Petitioners admitted the indebtedness of these notes, but did not know to whom to pay the money. The court ordered an interpleader between the bank and Gholston Brothers. Smith admitted the transaction and his insolvency. The banking company asked that Gholston Brothers deliver these notes to it, and that it be allowed to collect them. Gholston Brothers asked that they be allowed to retain possession of the notes and to collect them. On the trial evidence was submitted

which established the facts as hereinbefore stated. The court directed a verdict, adjudging the title to said notes to be in the Northeastern Banking Company, and requiring Gholston Brothers to deliver them up to said company. Gholston Brothers moved for a new trial on the ground, among others, that the court erred in directing said verdict. The court refused a new trial. To this judgment Gholston Brothers excepted and assigned error thereon.

*Berry T. Moseley,* for plaintiffs in error.

*E. C. Stark, R. A. Brown,* and *T. J. Shackelford,* contra.

HINES, J. (After stating the foregoing facts.)

1. Where land is sold and a portion of the purchase-money is paid by the vendee, and when the vendor delivers to the vendee a bond for title conditioned to make title upon payment of the purchase-money, both the vendor and the vendee have a beneficial interest in the land which they may sell or assign. *Georgia State B. & L. Asso.* v. *Faison,* 114 *Ga.* 655 (40 S. E. 760); *Dunson* v. *Lewis,* 156 *Ga.* 692, 700 (119 S. E. 846). Where an owner receives purchase-money notes for land and executes a bond obligating himself to execute a deed to the purchaser on full payment of notes given for the deferred payments of the purchase-price, and puts the purchaser in possession, the vendee acquires an equitable interest in the land, while the legal title remains in the vendor as security for payment of the balance of the purchase-money. *Carter* v. *Johnson,* 156 *Ga.* 207 (119 S. E. 22). Under such circumstances the vendor holds the title in trust for his vendee. While he can sell his interest in the land, if he does so and conveys the same to a third person, he can only sell subject to his outstanding bond for title; and the purchaser from him takes the land subject to the rights of the holder of his bond for title. Such purchaser stands in the shoes of the vendor. He acquires no greater or better title than the vendor had. As the vendor held the title in trust for the vendee in the bond for title, the purchaser from him likewise holds the title under a like trust for the obligee in the bond for title. When such obligee pays the balance of the purchase-money, such purchaser from the vendor is bound to convey the land to the original vendee or his assignee. The same is true where a grantee takes a deed from the vendor to secure a debt. In such a case the grantee takes the place of the

original vendor, holds the title in trust for the vendee, and has no greater rights than the vendor had. He is subject to all of the obligations of the vendor under his bond for title, and is bound to convey to the obligee on the payment of the purchase-money notes.

Where one purchases from the vendor in a bond for title, with notice thereof, it is not the land but the obligor's interest in it which such purchaser acquires. *Wilkerson* v. *Burr*, 10 *Ga.* 117. Such purchaser, as between himself and the vendor, would be entitled to the unpaid purchase-money. If at the time of his purchase there was no purchase-money due the vendor, or if notes given for the purchase-money had been transferred by the vendor without recourse, or without guaranty, such purchaser would acquire no title whatever. *Georgia State B. & L. Asso.* v. *Faison,* supra; *McLeod* v. *Bank of Abbeville,* 147 *Ga.* 33 (92 S. E. 645). If at the time of such purchase the vendor held negotiable notes for deferred payments of the purchase-money of the land, such purchaser would, as between himself and the vendor, be entitled to such notes or the proceeds thereof when collected. Although the purchaser did not acquire delivery and possession of such notes, the vendor would hold them in trust for the purchaser. What would be the effect of the transaction, if the purchaser does not acquire possession of the purchase-money notes, but leaves them in the possession of the vendor, who thereafter transfers them to a third person for value and without notice of the rights of such purchaser? The bona fide purchaser of negotiable notes, not dishonored, will be protected in his title, though the seller had none. Civil Code (1910), § 4118. A bona fide purchaser for value and without notice of an equity will not be interfered with by a court of equity. Civil Code (1910), §§ 4531, 4535.

When the bank took from Smith a deed to his interest in this land to secure an indebtedness due by him to it, and did not acquire and get possession of the oustanding purchase-money notes which fell due in the future, it ran the risk of the vendor trading these notes to some bona fide purchaser for value before due; and a subsequent holder of these notes, who acquired them before due, for value, and without notice, acquired a title superior to that of the bank. Under such circumstances the holder of the notes would be entitled to them and their proceeds in preference to the bank.

As the vendor only had title to the land as security for the payment of the purchase-money notes, the grantor only took such title as the vendor had; and in taking a security deed to the land from such vendor, with notice of the outstanding purchase-money notes, he only obtained title as security for the payment of said notes. He could not acquire title both as security for the balance of the purchase-money and for the debt of the vendor, for this would be conveying a greater title than the vendor had retained. If this were not so, the purchaser of the land, when his notes given for the purchase-money had been traded to an innocent holder, would have to pay both his notes to such holder thereof, and in addition the debt of the vendor, secured by his deed to the purchaser from the vendor, or lose the land. This would be unfair to the purchaser of the land. To deprive the bona fide holder of these notes of his title thereto would be unjust, under the facts of this case. If the bank, in taking from Smith a deed to this land, to secure a debt from him to it, purposely or negligently omitted to get possession of these purchase-money notes, the bank put it in the power of Smith to collect, trade, or pledge them. If Smith thereafter pledged them to Gholston Brothers who took them in good faith before due, and if either the bank or such pledgees must suffer loss by the action of Smith in the premises, then such loss should fall upon the bank, which put it in the power of Smith to do the wrong. When one of two innocent persons must suffer by the act of a third person, he who put it in the power of the third person to inflict the injury must bear the loss. Civil Code (1910), § 4537. If the bank was willing to trust Smith with these notes, to secure which alone Smith retained the title to this land, and to secure which Smith could only convey this land to the bank, and Smith abused the trust thus reposed in him, the bank must stand the loss.

There are no recitals in these purchase-money notes which would put Gholston Brothers on notice of the title or equity of the bank therein. If they purchased these notes before due, for value, and without such notice, they acquired a good title thereto; and their title under these circumstances would be superior to the title or equity of the bank to these notes. There was evidence that these parties took these notes before due, for value, and without notice of the claim of the bank.

2.  Applying the principles above ruled, we think that the court erred in directing a verdict in favor of the bank.

*Judgment reversed.  All the Justices concur, except*

Beck, P. J., dissenting.  I am of the opinion that the verdict directed by the court was the necessary result of the uncontradicted facts appearing in the evidence.  It is unnecessary to enter here upon a discussion at length of the principles of law that underlie the judgment, and in consideration of which I reach the conclusion that the ruling and judgment of the court should be affirmed. The principles of law controlling in the case are discussed at length in the opinion rendered by the court in the case of *Ga. B. & L. Asso.* v. *Faison,* 114 *Ga.* 655.  In that case it was said:  "When land is sold and a portion of the purchase-money is paid by the vendee, and the vendor delivers to the vendee a bond conditioned to make titles upon the payment of the balance of the purchase-money, both the vendor and the vendee have a beneficial interest in the land, and each may sell or assign his interest, and the interest of either will pass to the purchaser at a sale had under an execution issued against the vendor or the vendee, as the case may be.  But whether the sale be a judicial sale or a private sale, 'it is not the land but the debtor's interest in it, whether he be vendor or vendee, that is sold, leaving the residue untouched.'  *Wilkerson* v. *Burr,* 10 *Ga.* 117.  The purchaser of the interest of the vendor, whether at private or public sale, is entitled to call for the balance of the purchase-money as the representative of the vendor, and the purchaser of the interest of the vendee is entitled to call for a conveyance as the representative of the vendee, upon paying the balance due upon the purchase-money.  In determining what interest in the land the purchaser under such circumstances would obtain, it is therefore necessary to decide in each case what was the interest in the land, at the time of the sale, of the person from whom such purchaser bought.  If the vendor transfers to a third person, without endorsement or guaranty, the unpaid purchase-money notes of the vendee, the vendor from that moment ceases to have any interest whatever in the land, and a purchaser from him at private sale, or a purchaser at judicial sale under an execution against him, acquires no interest whatever in the land.  *Tompkins* v. *Williams,* 19 *Ga.* 570 (5) ; *McGregor* v. *Matthis,* 32 *Ga.* 417; *Neal* v. *Murphey,* 60 *Ga.* 388."

When Smith, the vendor, executed a security deed to Northeastern Banking Company, he conveyed to that company all of his beneficial interest in the land that remained in him, and which was represented by the notes for the unpaid purchase-money which were in his hands at the time of the execution of the deed, four of them being the notes that were afterwards transferred to Gholston Brothers before due. It is distinctly ruled in the case cited above that a vendor, situated as Smith was at the time of the execution of the security deed to the land in question, had a beneficial interest in the land to the amount of the notes still held and possessed by him for the unpaid purchase-money. His conveyance to the banking company conveyed all of his interest. So, at the time of the conveyance, a time prior to the delivery of the notes to Gholston Brothers, there were two parties who had an interest in the land; one was the petitioners, the Owenbys, and the other the Northeastern Banking Company. The Owenbys had a right, when the notes became due, to complete their title to the land. It could only be completed by acquiring the interest of the other party. That party was the banking company. They could not be required, in order to complete their title, both to purchase the interest of the banking company and to pay the notes to Gholston Brothers. Gholston Brothers had no interest in the land which, by the payment of the notes, the Owenbys could acquire and thereby perfect their title. The bank did have such an interest,—the outstanding fractional interest requisite to integrate the title of the Owenbys; and the Owenbys had the legal right under the bond for title, upon the payment of the outstanding notes, to acquire the interest of the bank. And the judgment of the court established their right to this, and properly went further to the extent of relieving them from the necessity of paying anything on the notes to Gholston Brothers. For the reasons stated, I dissent from the ruling made by the majority.